IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

THOMAS E. BATIE                                              PLAINTIFF

    v.             Case No. 04-5106

ALBERTSON'S, INC. and
VPA, INC., as a Third Party
Administrator                                                DEFENDANTS

**MEMORANDUM OPINION**

    Plaintiff brings this action pursuant to the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, challenging defendants' decision to deny him long-term disability benefits. The parties have submitted the administrative record (the "AR") (Doc. 11) and briefs (Docs. 12, 13, 16) on the issues before the Court. The matter is now ripe for consideration. For the reasons stated below, the Court finds that defendants' decision was not supported by substantial evidence and a separate judgment will be entered in favor of plaintiff.

**Background**

    1. Plaintiff worked for Albertson's, Inc. as a pharmacist from April 10, 1996, through March 21, 2001, when he alleges he became disabled and unable to work due to severe arthritis in his knees, chronic cellulitis caused by venous insufficiency in his legs, and his weight. Plaintiff received "Salary Continuation" from March 21, 2001, through June 20, 2001, and then applied for

1

disability benefits under an employee benefits plan sponsored by Albertson's and administered by VPA, Inc.  (AR 492.)

2. Under the terms of the plan, an employee qualifies for long-term disability benefits when he meets the following definition of "Totally Disabled":

> "Total Disability" shall mean the complete inability of the Employee to perform any and every duty of his or her **regular occupation** with the Employer... for 24 months of any continuous period of Total Disability.... [F]ollowing such 24 month period, Total Disability shall mean the complete inability of the Employee to perform any and every duty of **any gainful occupation** for which he or she is reasonably fitted by training, education, or experience ...

(AR 502) (emphasis added).

3. Defendants awarded plaintiff benefits for the initial 24 month period, finding that he was unable to perform the duties of his regular occupation as a pharmacist.  (AR 492.)  Defendants thereafter conducted a "Two-year Recertification" to determine whether plaintiff was disabled under the more stringent definition for post-24 month coverage.  Defendants concluded that plaintiff was not entitled to continuing benefits, as he was capable of performing sedentary work.  (AR 493, 494.)

4. The medical evidence included in the administrative record reflects the following:

\*   During the time period in question, plaintiff was approximately 60 years of age and, at five feet, ten and a half inches tall, he weighed over 300 pounds.  (AR 133, 338.)

2

*	Plaintiff has been diagnosed with severe degenerative arthritis in both knees, with areas in both knees "where the cartilage is gone and he basically has bone articulating or rubbing on bone." (AR 307.) Plaintiff has also been diagnosed with venous insufficiency in both legs, resulting in chronic swelling and cellulitis.[1] Plaintiff has been treated for these conditions on a consistent basis by Dr. Monte Maska, his primary care physician, and Dr. Michael Nachtigal, an orthopaedic surgeon. As of May 2001, both doctors opined that plaintiff's prognosis was poor and that he should apply for disability benefits.

*	In May 2002, at the request of plaintiff's attorney, Dr. David Volarich conducted an independent medical examination of plaintiff. (AR 131-39.) After reviewing plaintiff's medical records and interviewing and examining plaintiff, Dr. Volarich concluded that plaintiff was permanently and totally disabled due

---

[1]According to Dr. David Volarich, who, as stated below, conducted an independent medical examination of plaintiff:

> Venous insufficiency means that veins of that extremity are incompetent. They do not adequately return blood back to the heart. When that happens there is swelling that occurs in the leg. Certain blood products will eventually leak out of the venous system and ... cause skin break down and ulceration[s] to form as well with time. The skin is also much more predisposed to infection or what we call cellulitis. It's kind of a cascade of events that occurs after the veins have been incompetent for several years and the involved extremity is more swollen, erythematous, which means warm to the touch, and more prone to skin breakdown. (AR 336.)

to "lower extremity degenerative arthritis, right lower extremity venous insufficiency with stasis and his morbid obesity." (AR 138.) Dr. Volarich listed plaintiff's restrictions as:

> He is advised to limit repetitive stooping, squatting, crawling, kneeling, pivoting, climbing and all impact maneuvers.
>
> He should be cautious navigating uneven terrain, slopes, steps, and ladders especially if he must handle weight....
>
> He should limit prolonged weight bearing including standing or walking to 10 min or to tolerance....

(Id.)

Dr. Volarich was deposed in November 2002. When questioned by defendants' counsel, Dr. Volarich acknowledged that he placed no restrictions on plaintiff with respect to sitting and that he would not "have any problem with [plaintiff] trying" to perform a job that met the restrictions he identified. (AR 357.)

\*   Dr. Nachtigal, plaintiff's orthopaedic surgeon, was also deposed. When asked whether plaintiff could perform a sedentary job, Dr. Nachtigal explained:

> A.   From my standpoint, which would be the knees and the lymphedema[2], there could be some frustrations with the lymphedema if he ... remain[]ed seated for a long period of time. The treatment for lymphedema involves elevation of the legs....

---

[2]"Lymphedema" is swelling resulting from the obstruction of lymphatic vessels or lymph nodes and the accumulation of large amounts of fluid in the affected region. See Stedman's Medical Dictionary 1004 (26th ed. 1995).

4

>       Q.  So you're saying if he had a sitting job he would
>           also need the accommodation of having to be able to
>           elevate his feet, is that correct, or elevate his
>           legs, I guess?
>
>       A.  Yeah, spending time with his legs elevated would be
>           helpful.

(AR 173.)

* On July 14, 2003, plaintiff underwent a functional capacity evaluation at Healthsouth at defendants' request. The evaluation was performed by a licensed physical therapy assistant. The physical therapy assistant noted that plaintiff had been diagnosed with bilateral degenerative arthritis, but made no mention of his venous insufficiency/cellulitis problems. It does not appear from the written evaluation that the physical therapy assistant reviewed plaintiff's medical records; rather, it appears that she merely questioned plaintiff regarding his medical history and then performed a battery of functional tests. The physical therapy assistant concluded that plaintiff could perform sedentary work. (AR 393-401.)

* Dr. Maska, plaintiff's primary care physician, reviewed and addressed the functional capacity evaluation as follows:

> It has come to my attention that my patient ... has been
> classified in a recent functional capacity examination as
> capable of SEDENTARY WORK.  I feel that a categorization
> of even SEDENTARY work capacity is questionable in light
> of the following information previously provided:
>
> -   He suffers from severe bilateral knee pain and
>     lower extremity fluid retention due to degenerative
>     arthritis and venous insufficiency.

5

- In an eight hour work day the patient can stand for up to thirty minutes at a time and sixty minutes total in a day. This may be less due to pain.

- In an eight hour work day the patient can sit for up to two hours total, but only if his legs are extended and elevated....

In addition, this patient must lay down with his feet elevated two to three times during the day to control his swelling and pain. When this patient exceeds these guidelines[,] he frequently has to seek total bed rest for the day, or days, following to alleviate the swelling and pain.

I do not foresee any changes of this patient['s] condition that will ever allow him to return to work. It is my opinion that he will never again be able to participate in gainful employment.

(AR 130.)

\* On July 23, 2003, Dr. Michael Lala, a certified rehabilitation counselor, conducted an independent medical examination of plaintiff at plaintiff's attorney's request. Dr. Lala reviewed plaintiff's medical records and the depositions of Dr. Volarich and Dr. Nachtigal, and he also interviewed and examined plaintiff. Dr. Lala noted that plaintiff's "self[-]report[ed] and associated limitations [were] consistent and documented in the medical records" and that plaintiff had been found disabled under the Social Security Administration criteria. (AR 175, 180.) Dr. Lala concluded:

The medical restrictions in the records provided translate vocationally to an extremely limited occupational base. The remaining base of work is essentially a reduced and limited range of sedentary work.

> It is noted that he has been prescribed a cane. It has been suggested that he not stand or walk more than ten minutes at a time. Federal Regulations indicate that a person who is limited to the use of a cane and a sedentary vocational profile has a very limited occupational base. Essentially some movement either into the work site, during the work day, or around the work area is required of all jobs. This includes jobs where the person is primarily seated most of the work day. Further, it is medically necessary for him to elevate his leg above his heart while seated for relief of a medical condition. Elevation of the legs is not consistent with even sedentary work. This essentially erodes any remaining job base....
>
> Pain is felt to be a significant vocational factor in Mr. Batie's vocational profile. Medical records document pain and treatment for these symptoms. There is no indication that any medical professional doubts the degree and level of his pain. Pain can and does interfere with work and work tasks. Sedentary work for a person with Mr. Batie's vocational profile would require the ability to process complex information and make decisions using data. Given his level of pain it is not unreasonable to believe that his pain significantly interferes with his ability to process information. From a vocational perspective[,] this significantly erodes his potential occupational base....
>
> Mr. Batie indicated that he suffers from fatigue. Medical Professionals have indicated that he would not be able to work on a "full-time" basis day in and day out. This is essentially inconsistent with sustained work on a routine and continuous basis....
>
> Based on all this information, it is my professional opinion, that from a vocational perspective Thomas E. Batie ... is permanently and totally disabled ....

(AR 181, 193.)

5. On March 23, 2004, defendants issued a final decision denying plaintiff's claim for continuing disability benefits. Defendants reasoned that the functional capacity evaluation performed on July 14, 2003, indicated that plaintiff was capable of

7

performing sedentary work. Defendants further reasoned that there was no indication in Dr. Lala's July 27, 2003, evaluation "of any limits to sitting which is the requirement of a sedentary occupation." (AR 10-11.)

**Discussion**

6. ERISA provides a plan beneficiary with the right to judicial review of a benefits determination. *See* 29 U.S.C. § 1132(a)(1)(B). A denial of benefits by a plan administrator must be reviewed *de novo* unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case the administrator's decision is reviewed for an abuse of discretion. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Under the terms of plaintiff's employee benefits plan, the administrator has the "discretion to make fact findings and to determine all questions relating to the eligibility of Employees for benefits ...." (AR 523.) Accordingly, defendants' decision will be reviewed for an abuse of discretion.

7. Under the abuse-of-discretion standard, the Court must determine whether a reasonable person could have reached the same decision. See House v. Paul Revere Life Ins. Co., 241 F.3d 1045, 1048 (8th Cir. 2001). This inquiry focuses on the presence or absence of substantial evidence supporting the administrator's decision. Id. While the administrator's decision need not be

8

supported by a preponderance of the evidence, there must be "'more than a scintilla.'" Id. (citations omitted). Both the quantity and quality of evidence may be considered. See Norris v. Citibank, 308 F.3d 880, 884 (8th Cir. 2002).

8. Plaintiff offered overwhelming and uncontradicted evidence that he suffers from severe degenerative arthritis in both knees and venous insufficiency in both legs, resulting in chronic swelling and cellulitis. Plaintiff has been treated consistently for these conditions and, as pointed out by Dr. Lala, there is no indication that any medical professional has ever doubted the degree or level of plaintiff's complaints of pain.

Plaintiff's primary care physician, Dr. Maska, and his orthopaedic surgeon, Dr. Nachtigal, both opined that plaintiff was disabled. While plan administrators are not required to "accord special weight to the opinions of the claimant's physician," they may not "arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003).

Further, plaintiff has been found to be disabled by the Social Security Administration. While the disability standards under the ERISA plan at issue may be different than the social security standards, the Social Security Administration's determination nevertheless supports plaintiff's ERISA claim for disability benefits. See Riedl v. General American Life Ins. Co., 248 F.3d

9

753, 759 n.4 (8th Cir. 2001); Duffie v. Deere & Co., 111 F.3d 70, 74 n.5 (8th Cir. 1997).

9. Defendants argue that their decision was supported by substantial evidence, as the physical therapy assistant who conducted a functional capacity evaluation of plaintiff in July 2003, found that plaintiff had no limitations with regard to sitting and could therefore perform the demands of sedentary work. In the Court's judgment, a functional capacity evaluation completed by a physical therapy assistant cannot be construed as substantial evidence rebutting plaintiff's treating physicians' opinions. This is especially true given the fact that it does not appear that the physical therapy assistant even reviewed plaintiff's medical records. It also does not appear that she considered plaintiff's venous insufficiency/cellulitis problems, as the only diagnosis she noted for plaintiff was bilateral degenerative arthritis. Further, Dr. Maska, plaintiff's primary care physician, specifically addressed the functional capacity evaluation and explained that plaintiff could not perform sedentary work, because he had to have his legs elevated when sitting to control his pain and swelling. Dr. Nachtigal, plaintiff's orthopaedic surgeon, corroborated this fact.

10. Defendants also argue that their decision is supported by the fact that neither Dr. Volarich, who performed an independent medical examination of plaintiff in May 2002, nor Dr. Lala, who

performed one in July 2003, placed any restrictions on plaintiff with regard to sitting. In his written evaluation, Dr. Volarich concluded that plaintiff was disabled, but, at his deposition, he acknowledged that he did not place any sitting restrictions on plaintiff. However, Dr. Volarich was not specifically asked to address plaintiff's need to elevate his legs while sitting and there is nothing in the record controverting plaintiff's treating physicians' opinions that it was medically necessary for him to do so.

With regard to Dr. Lala, defendants' contention that Dr. Lala placed no sitting restrictions on plaintiff is incorrect. Dr. Lala specifically stated, "[I]t is medically necessary for [plaintiff] to elevate his leg above his heart while seated for relief of a medical condition." (AR 181.)

11. Finally, defendants argue that Dr. Lala's evaluation failed to discuss "potential jobs that would permit Mr. Batie to sit while intermittently elevating his leg." (Doc. 13 at pg. 21 fn. 2.) The Court sees no merit to this argument. Dr. Lala specifically found: "Elevation of the legs is not consistent with even sedentary work. This essentially erodes any remaining job base."

**Conclusion**

12. Based on the foregoing, the Court concludes that defendants' decision was not supported by substantial evidence and

11

that defendants therefore abused their discretion in denying plaintiff's claim for continuing disability benefits.

13. The parties shall have ten days from entry of this order in which to confer and submit a written stipulation calculating the total award due plaintiff for past-due benefits. A judgment will then be entered awarding plaintiff past-due benefits and reinstating the payment of continuing benefits.

14. Further, the Court will consider awarding a reasonable attorney's fee and costs to plaintiff under 29 U.S.C. § 1132(g). Plaintiff shall submit an application for fees and costs, including an itemization and affidavit and a brief supporting her argument as to why an award of fees and costs would be appropriate in this case, within ten days as well. Defendants shall have ten days thereafter in which to file a response.

IT IS SO ORDERED this 12th day of May 2006.

/S/JIMM LARRY HENDREN
JIMM LARRY HENDREN
UNITED STATES DISTRICT JUDGE